**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | |
|---|---|
| SARAH E. SCHAACK, | |
| Plaintiff, | No. 07-CV-3080-LRR |
| vs. | **ORDER** |
| ABCM CORPORATION, d/b/a NORA SPRINGS CARE CENTER, | |
| Defendant. | |

_____

## *I. INTRODUCTION*

The matter before the court is Defendant ABCM Corporation d/b/a Nora Springs Care Center's Motion for Summary Judgment ("Motion") (docket no. 23).

## *II. PROCEDURAL BACKGROUND*

On December 18, 2007, Plaintiff Sarah E. Schaack filed an Amended Complaint ("Complaint") (docket no. 4). In the Complaint, Plaintiff alleges Defendant violated her rights under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq*. Plaintiff requests monetary damages, equitable relief, attorney fees and costs. On January 8, 2008, Defendant filed an Answer (docket no. 8) in which it denies the substance of the Complaint.

On February 6, 2009, Defendant filed the Motion. On February 16, 2009, Plaintiff asked the court to extend its deadline to respond to the Motion. On February 17, 2009, the court granted Defendant's request and extended Defendant's deadline to March 16, 2009. Defendant never filed a resistance to the Motion.

## *III. SUBJECT MATTER JURISDICTION*

The court has federal question jurisdiction over Plaintiff's FMLA claim. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions

arising under the Constitution, laws, or treaties of the United States").

## IV. *STANDARD OF REVIEW*

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue of fact is genuine when 'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material when it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. "[T]o establish the existence of a genuine issue of material fact, 'a plaintiff may not merely point to unsupported self-serving allegations.'" *Anda v. Wickes Furniture Co.*, 517 F.3d 526, 531 (8th Cir. 2008) (quoting *Bass v. SBC Commc'ns, Inc.*, 418 F.3d 870, 872 (8th Cir. 2005)). Rather, the nonmoving party "'must substantiate [its] allegations with sufficient probative evidence that would permit a finding in [its] favor.'" *Anda*, 517 F.3d at 531 (quoting *Bass*, 418 F.3d at 873). The court must view the record in the light most favorable to the nonmoving party and afford it all reasonable inferences. *Baer Gallery, Inc. v. Citizen's Scholarship Found. of Am., Inc.*, 450 F.3d 816, 820 (8th Cir. 2006) (citing *Drake ex rel. Cotton v. Koss*, 445 F.3d 1038, 1042 (8th Cir. 2006)).

Additionally, Local Rule 56.c applies because Plaintiff did not resist the Motion. Local Rule 56.c provides:

> If no timely resistance to a motion for summary judgment is filed, the motion may be granted without prior notice from the court. If a party does not intend to resist a motion for summary judgment, the party is encouraged to file a statement indicating the motion will not be resisted.

LR 56.c. Further, the court deems Defendant's "Statement of Undisputed Material Facts" (docket no. 23-3) to be admitted. *See* LR 56.b ("The failure to respond, with appropriate

citations to the appendix, to an individual statement of material fact constitutes an admission of fact.").

## V. UNDISPUTED FACTS

### A. *The Parties*

Plaintiff is a resident of Cerro Gordo County, Iowa. Defendant is a corporation doing business at a facility ("Facility") in Nora Springs, Iowa. Defendant is Plaintiff's former employer.

### B. *Defendant's Policy*

Defendant's policy on full-time work is that employees must maintain an average of 390 hours per quarter or approximately 32.5 hours per week to be considered a full-time employee. Otherwise, Defendant considers an employee to be part-time. Defendant never promises its employees that they will be scheduled for full-time hours.

### C. *Plaintiff's Position*

Plaintiff began working for Defendant on June 24, 2004 as a cook. At that time, Defendant classified Plaintiff as a part-time employee and paid her $8.00 per hour. Defendant never promised Plaintiff she would receive full-time hours or be scheduled to a particular shift. Plaintiff rarely worked forty hours in a week and considered a full-time position to require between 32 and 40 hours a week. Plaintiff's shifts would either run from 6:00 a.m. until 2:00 p.m. or from 1:00 p.m. until 7:00 p.m. Plaintiff typically worked the 6:00 a.m. to 2:00 p.m. shift and concedes she did not experience significant problems if she worked a different shift. Plaintiff advised Defendant that she did not want to maintain 390 hours per quarter. Accordingly, Defendant designated her as a part-time employee.

Occasionally, Plaintiff would work as a dietary aide instead of as a cook. Cooks and dietary aides work together closely. Their job duties overlap. Frequently, Defendant asked other cooks to work as dietary aides. In her deposition, Plaintiff testified that the

dietary aide position is "a total[ly] different job" than a cook position because a cook makes meals for Facility residents and a dietary aide does not cook. Plaintiff's Deposition (docket no. 23-2), at 85. Plaintiff also believes dietary aides do not work as many hours as a cook or have as much responsibility. When a supervisor was absent from the kitchen, a cook would take responsibility—not a dietary aide.

## D. *Plaintiff's Hours*

Prior to commencing FMLA leave, Plaintiff averaged 27.7 work hours per week, with two exceptions: (1) in one week in January of 2006, Plaintiff worked in excess of 32 hours; and (2) for two weeks in February of 2006, Plaintiff worked in excess of 32 hours during both weeks. The number of residents at the Facility also impacted Plaintiff's hours. An increase in residents led to more hours for kitchen employees and a decrease in residents corresponded with a decrease in hours. Plaintiff sometimes requested additional hours from her supervisor. Her supervisor sometimes accommodated her request. Sometimes, she was unable to provide Plaintiff with additional hours.

## E. *Plaintiff Takes FMLA Leave*

Plaintiff injured her back in February of 2006. On February 20, 2006, Plaintiff began taking FMLA leave due to this injury. Plaintiff initiated her leave by contacting Judy Anderson in Defendant's Human Resources Department. Ms. Anderson did not express any frustration with Plaintiff's request for FMLA leave.

Plaintiff submitted work releases from her physician extending her FMLA leave. While on leave, Plaintiff experienced no harassment from Defendant. Plaintiff was never threatened in any manner relating to her employment with Defendant.

On April 26, 2006, Plaintiff's physician provided her with a release indicating that she could return to work full-time as a cook without any restrictions. Plaintiff provided this release to Defendant and informed Ms. Anderson of her readiness to return to work.

4

### F. Defendant Prepares for Plaintiff's Return to Work

Ms. Anderson did not express any frustration or anger in reaction to Plaintiff's notice that she planned to return to work. Ms. Anderson reviewed Plaintiff's payroll records for the period before her return to work and determined she had worked an average of 27.7 hours each week before taking FMLA leave. Accordingly, Defendant determined it would be fair to schedule Plaintiff's return to work in a manner consistent with her average weekly hours prior to her taking leave.

### G. Plaintiff Prepares to Return to Work

On April 21, 2006, the Friday prior to her scheduled return to work, Plaintiff spoke with her immediate supervisor, Connie Davis. Ms. Davis reviewed the planned work schedule for the week of April 23-29, which indicated Plaintiff would work as a cook on some days and as a dietary aide on other days. Ms. Schaack testified that she was disappointed because the dietary aide position was not her "normal job"; that is, her cook position. Plaintiff did not discuss her schedule for the following week and assumed she would be scheduled for her regular hours. Plaintiff did not ask for more hours from Ms. Davis. Plaintiff does not recall whether she asked Ms. Anderson or any other employee whether the schedule she reviewed would be her permanent schedule. Plaintiff also did not ask whether she would work in the future as a dietary aide or as a cook. Despite Plaintiff's perceived position change, her pay rate remained unchanged and she remained in the same department.

Plaintiff spoke to Ms. Anderson about her concerns for five to six minutes. Then, Plaintiff spoke to Ms. Davis about those same concerns for five minutes. Plaintiff did not inquire into future schedules or other factors affecting her employment.

### H. Plaintiff Resigns

On April 21, 2006, two days before Plaintiff was scheduled to resume work, Plaintiff informed Ms. Anderson that she intended to quit her job. When Ms. Anderson

asked Plaintiff why, Plaintiff responded that she was unhappy with the job to which she was scheduled to return as well as the hours she was scheduled to work.

In response to a question concerning the factors Plaintiff believed made her work conditions intolerable, Plaintiff stated it was because her hours were not the same and because her job was different. Plaintiff offered no other reasons for claiming her work conditions were intolerable.

## VI. ANALYSIS

Defendant argues summary judgment is appropriate because it did not take any adverse employment action against Plaintiff and because Plaintiff cannot establish any adverse employment action is causally connected to taking FMLA leave. Defendant also argues Plaintiff cannot recover punitive damages or damages for emotional distress or pain and suffering.

### A. FMLA Claim Framework

"The FMLA entitles an employee to twelve workweeks of leave during any twelve-month period if he or she has a 'serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Phillips v. Mathews*, 547 F.3d 905, 909 (8th Cir. 2008) (quoting 29 U.S.C. § 2612(a)(1)(D)). "A 'serious health condition' is any 'illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider.'" *Id.* (quoting 29 U.S.C. § 2611(11)). The Eighth Circuit Court of Appeals has identified two types of FMLA claims: (1) interference claims, that is, "'claims in which the employee alleges that an employer denied or interfered with [her] substantive rights under the FMLA,'" and (2) retaliation claims, that is, "'claims in which the employee alleges that the employer discriminated against [her] for exercising [her] FMLA rights.'" *Id.* (quoting *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1050 (8th Cir. 2006)).

The Complaint clearly alleges a retaliation claim. It is less clear whether the Complaint alleges an interference claim. The prayer for relief contains a request for a declaratory judgment that Defendant prohibited Plaintiff from exercising her FMLA rights. However, the facts set forth in the Complaint do not give rise to an interference claim because they do not allege or suggest Defendant denied Plaintiff FMLA leave to which Plaintiff was entitled. *See Reed v. Lear Corp.*, 556 F.3d 674, 681 (8th Cir. 2009) (stating an interference claim arises "when an employer improperly denies a request for leave"). Additionally, the facts set forth above clearly indicate Defendant did not deny, much less improperly deny, Plaintiff's request for FMLA leave. Accordingly, to the extent the Complaint alleges an interference claim, the court shall dismiss it.

Next, the court turns to Plaintiff's retaliation claim. "The FMLA prohibits employers from discriminating against an employee for asserting his [or her] rights under the [FMLA]." *Stallings*, 447 F.3d at 1051 (citing *Darby v. Bratch*, 287 F.3d 673, 679 (8th Cir. 2002)). "'This prohibition necessarily includes consideration of an employee's use of FMLA leave as a negative factor in an employment action.'" *Id.* (quoting *Darby*, 287 F.3d at 679). "'Basing an adverse employment action on an employee's use of leave is therefore actionable.'" *Id.* (quoting *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 832 (8th Cir. 2002)).

An employee can prove a retaliation claim with "circumstantial evidence[] using the *McDonnell Douglas* burden-shifting analysis." *Hite v. Vermeer Mfg. Co.*, 446 F.3d 858, 865 (8th Cir. 2006) (citing *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802-03 (1973)). The *McDonnell Douglas* burden-shifting analysis proceeds as follows:

> First, the employee must establish a prima facie case of retaliatory discrimination by showing that she exercised rights afforded by the [FMLA], that she suffered an adverse employment action, and that there was a causal connection between her exercise of rights and the adverse employment action. Second, once the employee establishes a prima facie

7

> case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. Finally, the burden shifts back to the employee to demonstrate that the employer's proffered reason is pretextual. The employee must present evidence that (1) creates a question of fact regarding whether the defendant's reason was pretextual and (2) creates a reasonable inference that the defendant acted in retaliation.

*Id.* (internal quotation marks and citations omitted).

### *B. No Adverse Employment Action*

There is no evidence suggesting Defendant took any adverse employment action against Plaintiff. In her deposition, Plaintiff asserted Defendant's "adverse employment action" was scheduling Plaintiff to work on some shifts as a dietary aide rather than a cook and scheduling her to work during a time other than her usual 6:00 a.m. to 2:00 p.m. shift. "'Upon return from FMLA leave, employees are entitled to reinstatement to the same or an equivalent position without the loss of benefits[.]'" *Darby*, 287 F.3d at 679 (quoting *Spangler v. Fed. Home Loan Bank of Des Moines*, 278 F.3d 847, 851 (8th Cir. 2002)). "An equivalent position is one that is virtually identical to the employee's former position in terms of pay, benefits and working conditions, including privileges, perquisites and status. It must involve the same or substantially similar duties and responsibilities, which must entail substantially equivalent skill, effort, responsibility, and authority." 29 C.F.R. § 825.215(a).

The position to which Defendant sought to return Plaintiff was equivalent to the position Plaintiff held prior to taking FMLA leave. Before her FMLA leave, Plaintiff worked as both a cook and dietary aide. Subsequent to taking her FMLA leave, Defendant scheduled Plaintiff to work as both a cook and dietary aide. Defendant did not reduce Plaintiff's wages. Additionally, Defendant scheduled Plaintiff for the same amount of hours she had averaged prior to her injury. The only difference between Plaintiff's work schedule prior to and after her FMLA leave is that, after her leave, Plaintiff was scheduled

to work a few shifts at times other than her usual 6:00 a.m. to 2:00 p.m. shift. "[A] shift change, without more, is not an adverse employment action." *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 769 (5th Cir. 2001); *see also McBurney v. Stew Hansen's Dodge City*, 311 F. Supp. 2d 811, 815 (S.D. Iowa 2004) (Longstaff, C.J.) (*aff'd* 398 F.3d 998 (8th Cir. 2005) (stating same). In light of the foregoing, the court finds Plaintiff did not suffer any "adverse action" and shall dismiss her claim.

In conjunction with this issue, Plaintiff claims Defendant's scheduling constituted a specific type of adverse action: constructive discharge. "'A constructive discharge exists when an employer deliberately renders the employee's working conditions intolerable and thus forces him [or her] to quit his [or her] job.'" *Johnson v. Bunny Bread Co.*, 646 F.2d 1250, 1256 (8th Cir. 1981) (citing *Slotkin v. Human Dev. Corp.*, 454 F. Supp. 250, 255 (E.D. Mo. 1978)). "A constructive discharge arises only when a reasonable person would find the conditions of employment intolerable." *Tidwell v. Meyer's Bakeries, Inc.*, 93 F.3d 490, 494 (8th Cir. 1996). A reasonable person would not have found Plaintiff's work conditions subsequent to her leave were intolerable. Indeed, Plaintiff admitted shift changes did not pose a problem for her. Additionally, Plaintiff did not give Defendant an adequate opportunity to resolve Plaintiff's perceived scheduling problems because she quit almost immediately after she learned about her schedule and before her scheduled first day back to work. "An employee who quits without giving her employer a reasonable chance to work out a problem is not constructively discharged." *West v. Marion Merrell Dow, Inc.*, 54 F.3d 493, 498 (8th Cir. 1995). In light of the foregoing, the court finds Plaintiff was not constructively discharged.

### C. No Causal Connection

Even if evidence established Plaintiff suffered an adverse employment action, Plaintiff cannot show the requisite causal connection to her FMLA leave. Defendant ensured Plaintiff received the same amount of hours she had prior to taking FMLA leave

and scheduled her to work in an equivalent position at the same rate of pay. Clearly, Defendant did not take any negative action against Plaintiff because she took FMLA leave. This defeats Plaintiff's prima facie case. *See Hite*, 446 F.3d at 865 (stating a plaintiff's prima facie case requires a showing "that there was a causal connection between her exercise of rights and the adverse employment action").

In conclusion, the court finds Plaintiff cannot satisfy her prima facie case with respect to showing adverse employment action and causation. Accordingly, the court shall dismiss the Complaint.

### *D. Miscellaneous Arguments*

Defendant makes various arguments with respect to the type of damages Plaintiff is entitled to receive. Because the court shall dismiss the Complaint, it need not address these issues.

### VII. CONCLUSION

In light of the foregoing, the court **GRANTS** the Motion (docket no. 23) and **DISMISSES** the Complaint (docket no. 4).

**IT IS SO ORDERED.**

**DATED** this 5th day of May, 2009.

_____
LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA